IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRISTOPHER L. DAVIES,

        Plaintiff,

   v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

_____

Civ. No. 6:14-cv-00491-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Kristopher L. Davies seeks judicial review of the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is not supported by substantial evidence, the decision is REVERSED and this case is REMANDED for payment of benefits.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his applications on May 20, 2010, alleging disability as of October 15, 2009. Tr. 11, 254. After the Commissioner denied his application initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). Tr. 215–216. On August 23, 2012, an administrative hearing was held. Tr. 78-147. On September 12, 2012, ALJ Ted W. Neiswanger issued a written decision finding Plaintiff not disabled. Tr. 11–23. On February 3, 2014, the Appeals Council denied Plaintiff's subsequent request for review,

so the ALJ's decision became the final decision of the Commissioner. Tr. 1–3. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step sequential evaluation to determine disability. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, the

claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is found not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ concluded that Plaintiff had the following severe impairments: Ehlers-Danlos syndrome, IBS, mood disorder due to Ehlers-Danlos syndrome, and generalized anxiety disorder. *Id*. Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity (RFC). He determined Plaintiff retains the capacity to perform less than a full range of light work; he can lift/carry/push/pull 35 pounds occasionally and 20 pounds frequently; sit, stand, and walk for six hours in an eight-hour workday with the freedom to shift between standing and sitting "on a 50/50 basis"; perform simple routine work tasks; have occasional contact with supervisors and the public; however, he cannot perform work that requires good communication if there is significant background noise; and is unable to perform fast-paced production work tasks. Tr. 15. At step four, the ALJ found Plaintiff had no past relevant work. Tr. 21. At step five, based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including hand bander, box filler, and bench worker. Tr. 22. Accordingly, the ALJ found Plaintiff not disabled. Tr. 22–23.

Plaintiff contends the ALJ: (1) erroneously discredited Plaintiff's credibility; (2) erroneously discredited the opinions of Drs. Kalidinki, Pethick, and Eckstein; (3) failed to incorporate the testimony of lay witness Anthony Davies; and (4) failed to identify jobs consistent with Plaintiff's RFC at step five.

**I. Plaintiff's Credibility**

Plaintiff argues the ALJ erred by rejecting his subjective symptom testimony. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

The ALJ noted that Plaintiff was searching for employment, which was "inconsistent with complete disability." Tr. 19. The ALJ cites two records to support his finding; first, a 2010 psychological evaluation by Steve Pethick, Ph.D., noting Plaintiff was "currently unemployed . . . [but] would like to find employment and possibly obtain his GED." Tr. 451. Second, a 2009 chart note authored by family nurse practitioner Bill Briggs, making only passing reference to employment, indicating Plaintiff "continues to be frustrated with lack of options for work." Tr.

488. Neither of these citations reasonably evince Plaintiff's belief that he can perform full-time work as defined by the Social Security Act (the Act). At most, the first citation suggests Plaintiff's desire to earn income, particularly in light of his child's recent birth. Tr. 451. The second citation is even less compelling, as it notes only Plaintiff's frustration, and does not identify whether his frustration is due to his disability, the lack of available jobs in general, or simply because he does not have a job. Tr. 488. Moreover, Social Security case law typically discounts plaintiff credibility for *failing* to show adequate motivation to seek or attempt gainful employment. *See*, *e.g.*, *Thomas*, 278 F.3d at 959 ("[E]xtremely poor work history" showing "little propensity to work" was a clear and convincing rationale to discount subjective testimony.). It is nonsensical to require a Plaintiff to exhibit a desire to return to work while simultaneously not exhibiting the same desire in order to avoid diminishing his credibility. Defendant's case law, *Macri v. Chater*, 93 F.3d 540 (9th Cir. 1996), is distinguishable because it implied the plaintiff could not find work in his field due to a "slowdown" in the industry rather than due to his alleged pain symptoms. *Id.* at 544. The ALJ's reasoning fails.

The ALJ further found Plaintiff's activities of daily living (ADLs) belied the veracity of his testimony. *See* tr. 19. Testimony regarding ADLs may impugn Plaintiff's credibility in two ways: first, because the ADLs contradict other testimony; or second, by showing Plaintiff is not disabled because the ADLs meet the threshold for transferable work skills. *Orn* v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Although Defendant argues the ALJ invoked the "first permissible use" of ADLs, the ALJ explicitly stated that Plaintiff's ADLs were inconsistent with "complete disability," not previous testimony. Def.'s Br. 7, ECF No. 20; tr. 18. Accordingly, none of the reasons cited by the ALJ—caring for his daughter with assistance from his parents, performing some daily exercise, occasionally blowing glass, fixing computers for others, playing disc golf

(which is sometimes interrupted by pain), or performing horticulture—persuasively meet a threshold of ability to maintain full-time employment. As the Ninth Circuit has repeatedly held, a Plaintiff should not be penalized for attempting to lead a normal life in the face of his limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). The ALJ's finding is not clear and convincing.

Plaintiff's credibility was also impugned by the finding that he did not adhere to his medication regimen. Tr. 19. Unexplained medical noncompliance has been upheld as a valid rationale for a negative credibility assessment, as it may be evidence that a Plaintiff's symptoms are not as severe as alleged. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ supported his finding with a single passage from Dr. Judith Eckstein's psychodiagnostic evaluation of May 24, 2012, which stated "[h]is current medications include Prozac (40mg) . . . and Seroquel . . . he only takes the Seroquel three to four times per week and doesn't take the Prozac otherwise which limits its efficacy." Tr. 614. Plaintiff argues that despite some noncompliance, he is "regularly taking psychotropic medication for his mental impairments[,]" "the vast majority of the time, Plaintiff took the medications prescribed[,]" and "Prozac had not been helping him much." Pl.'s Br. 26, ECF No. 17.

The record reflects that throughout the relevant time period, Plaintiff took a number of psychoactive medications for his mental impairments, including Cymbalta, Ritalin, Celexa (citalopram), Seroquel, Bupropion, and Prozac (fluoexetine). Tr. 563–68, 623–25. Defendant submits that Plaintiff "consistently reported improvement[.]" However, only one of the six records relied upon by Defendant describes improvement with Prozac. Def.'s Br. 8, ECF No. 20; tr. 544. The remaining citations noted improvement with medical marijuana (tr. 388), Cymbalta (tr. 394), or Celexa (tr. 551, 554, 599), and the Cymbalta and Celexa were eventually replaced by

Prozac/fluoexetine. (tr. 564, 566). Further, despite reported improvement after transitioning from 10mg to 20mg, the Prozac dosage had to be increased again to 40mg on April 7, 2011 due to continuing symptoms. Tr. 44, 547, 567. The ALJ's finding is further weakened by Dr. Eckstein's post-decision opinion, in which she indicates the inconsistencies noted in the decision (tr. 19) did not change her opinion regarding the severity of Plaintiff's limitations (tr. 626), including marked limitation in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, and complete a normal workday and workweek without interruptions (tr. 618). Additionally, the ALJ cannot "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). The record reflects that Plaintiff attempted to avoid using "pills" due to his previous experience with side effects as well as warnings from his providers about using certain medications in concert with medical marijuana. Tr. 14–26. Further, despite Plaintiff's explanation, the ALJ did not inquire about Plaintiff's Prozac use. *Id.* Finally, the record does not contain any evidence that Plaintiff was exaggerating his symptoms regarding depression and/or anxiety, or that Plaintiff was otherwise noncompliant with any of many other medications he was prescribed over the relevant time period. Accordingly, viewing the record as a whole, the rationale provided by the ALJ is not legally sufficient.

The ALJ further indicated Plaintiff's credibility was impugned by his inconsistent statements about alcohol use. Tr. 19. Plaintiff concedes he made some inconsistent statements regarding his alcohol use, but contends the ALJ's rationale is nevertheless too weak to meet the

"clear and convincing" evidentiary threshold. Pl.'s Br. 22, ECF No. 17. Defendant responds that

regardless of the extent of Plaintiff's actual alcohol use, the ALJ's finding was valid because a

lack of credibility in one area of testimony can carry over to a claimant's subjective complaints.

Def.'s Br. 6, ECF No. 20. The ALJ noted that in 2012, Plaintiff described drinking alcohol only

rarely because it caused stomach discomfort. Tr. 19. It was also noted Plaintiff reported using

alcohol in May 2010. Tr. 19, 446, 614. The ALJ indicated the May 2010 alcohol use was

inconsistent with two chart notes, one from October 2010 by Ravi Kaladindi, M.D., and another

by Barbara Jacobsen, FNP, in July 2011, both noting Plaintiff "never" used alcohol. Tr. 510, 555.

As a threshold matter, the ALJ mischaracterized Plaintiff's statement from the May 2010

intake form: Plaintiff explained that he had used alcohol at the age of 6, then at age 14 or 15, age

18, and then at age 21. Tr. 446. He did not indicate he was presently using alcohol, as implied by

the ALJ. *See id.*; tr. 19. At his psychological evaluation two months later, he indicated he was not

then using alcohol. Tr. 452. Thus, it appears that although Plaintiff had used alcohol a few times

in the past, he was not using alcohol by July 2010, and therefore it stands to reason that a doctor

would indicate Plaintiff "never" used alcohol when questioned in October 2010 and July 2011.

Tr. 510, 555. Plaintiff's indication of occasional alcohol use in 2012 does not contradict his

abstention from alchohol after his birthday in 2010, or during 2011. Tr. 614. While the ALJ's

rationale is arguably substantial evidence of inconsistent statements detracting from Plaintiff's

credibility, the reasoning is tenuous at best. Consistent with Ninth Circuit precedent, because the

ALJ's other reasons for discounting Plaintiff's testimony are not supported by substantial

evidence and thus do not meet the clear and convincing standard, considering the record as a

whole, the Court concludes the ALJ erred in discrediting Plaintiff's testimony. *See Burrell v.*

*Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (citations omitted).

## II. Medical Opinion Evidence

An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must give clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often by entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation marks omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600–01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, the treating and examining doctors' opinions are contradicted by the state medical examiners. Tr. 20–21. Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 F.3d at 1012.

## A. Dr. Kalidindi

Plaintiff argues that the ALJ failed to incorporate all of treating physician Dr. Kalidindi's restrictions when formulating his RFC. Pl.'s Br. 28, ECF No. 17. Dr. Kalidindi indicated in October 2010 that, in addition to lifting and sit/stand restrictions, Plaintiff could only work four hours per day. Tr. 69. Dr. Kalidindi continued to limit Plaintiff to a four-hour workday in April 2011. Tr. 38. While the ALJ ultimately integrated Dr. Kalidindi's restrictions regarding a 35-

pound lifting/pushing/pulling limit and 50/50 sit/stand/walk requirement into Plaintiff's RFC assessment, the ALJ ultimately rejected the four-hour day restriction, explaining: "I believe Dr. Kalidindi's assessment regarding a 4-hour workday was made in context of that job so that the claimant could limit his hours (due to the stressful atmosphere of the [meat locker] job)." Tr. 20. Plaintiff contends that the ALJ did not adequately explain why he concluded Dr. Kalidindi's four-hour restriction was only applicable to Plaintiff's meat locker cleaning job. Pl.'s Br. 24–25, ECF No. 17.

The Court is unable to locate any direct support for the ALJ's interpretation of Dr. Kalidindi's work restrictions. Tr. 20. Although the ALJ stated that his opinion was couched "[i]n context of the claimant's testimony[,]" the ALJ failed to identify the testimony that reasonably supported his belief. *See* tr. 20. Further, while the ALJ noted Plaintiff's job at the meat locker involved a "stressful atmosphere[,]" Dr. Kalidindi did not mention depression or anxiety as the impetus for work restrictions; rather, he indicated the restrictions were due to pain from Ehlers-Danlos syndrome. Tr. 470, 521. On balance, considering the Act's deference to the opinion of a treating physician, the conclusory nature of the ALJ's finding, and the lack of both specificity and medical or testimonial evidence in support, this finding cannot be upheld.

## B. Dr. Pethick

Plaintiff argues the ALJ also failed to account for the limitations posited by Dr. Pethick. Pl.'s Br. 29–31, ECF No. 17. Dr. Pethick opined that "[i]n any employment setting . . . [Plaintiff] will benefit from certain accommodations." Tr. 456. These included extra time for job tasks, a distraction-free setting, clearly spoken instructions, and performing only a single task at a time. *Id*. The doctor further recommended Plaintiff be allowed to use a handheld memory aid and provided opportunities to take breaks as needed for his "medical condition." *Id*. The ALJ

indicated he found Plaintiff's "mental impairments severe and restrict the amount of work he can do" based in part on Dr. Pethick's assessment. Tr. 20. Defendant contends, and the Court agrees, that Dr. Pethick's recommended work accommodations are similar to the recommendations discussed in *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009). Def.'s Br. 14, ECF No. 20. Partly in response to Dr. Pethick's opinion, the ALJ limited Plaintiff to simple and routine tasks, only occasional contact with supervisors and the public, limitations around background noise, and restriction from fast-paced production work. Tr. 15, 21. However, as in *Valentine*, Dr. Pethick's suggestions were presented as recommendations rather than concrete functional limitations, as he noted they may "vary in different employment settings." Tr. 456. Moreover, the ALJ was not required to accept Dr. Pethick's opinion regarding limitations arising from physical conditions, as it is outside of his area of expertise. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (citations omitted). Thus, the ALJ did not err in assessing Dr. Pethick's assessment.

## C. Dr. Eckstein

The ALJ indicated he derived Plaintiff's RFC based in part on Dr. Eckstein's medical opinion of May 2012. Tr. 20–21, 612–16. Dr. Eckstein concluded Plaintiff had marked limitations in understanding, remembering, and carrying out detailed instructions; and sustaining a regular routine without special supervision. Tr. 617–18. He also concluded that Plaintiff would have marked limitation in the ability to complete a normal workday and workweek without interruptions, and to perform at consistent pace without unreasonable breaks. Tr. 618. Unlike Dr. Pethick's recommendations, Dr. Eckstein's report provides clear functional limitations. *Id.* Although Defendant contends that "the ALJ found other treatment records that undermined Dr. Eckstein's opinion," the ALJ did not articulate the rationale for failing to adopt the doctor's

functional limitations, nor did he specify any undermining evidence, despite purporting to accord his opinion some weight. *See* tr. 20–21. The Court cannot affirm the Commissioner's decision on a ground that the ALJ did not invoke in his decision. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Accordingly, the ALJ failed to provide legally sufficient reasons to discredit the first opinion of Dr. Eckstein.

Plaintiff submitted additional medical opinion evidence from Dr. Eckstein after the hearing. Tr. 626–28. Because the new evidence was considered by the Appeals Council, that evidence is part of the administrative record and therefore must be considered by this Court. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The post-hearing evidence—a questionnaire dated October 4, 2012—reflects Dr. Eckstein's opinion that Plaintiff has difficulty maintaining focus for sustained periods, has poor memory, must re-read material several times in order to retain it, and is apt to make errors he does not recognize. Tr. 627. The doctor further explained that Plaintiff's depression and anxiety, combined with physical pain, would likely interrupt the workweek. Tr. 628. In short, based on the Court's independent review, Dr. Eckstein's second opinion is generally consistent with her first opinion, as it suggests Plaintiff will have trouble with concentration, persistence, and pace, as well as sustaining work activity without interruptions due to his mental impairments.

### III. Lay Witness Testimony

Plaintiff argues the ALJ failed to properly incorporate his father's lay witness testimony into his RFC. The ALJ summarized the written testimony of Mr. Davies, and indicated "I find [Mr. Davies's] observations are generally consistent with the found residual functional capacity and do not support greater limitations." Tr. 20. Plaintiff contends Mr. Davies's testimony, if fully credited, requires a finding that Plaintiff cannot sustain full-time work. Pl.'s Br. 32–33, ECF No.

17. Mr. Davies indicated Plaintiff experiences constant pain, has trouble completing tasks, is easily angered and frustrated, and has a number of physical limitations which requires lifting and positional restrictions. Tr. 305, 310. Defendant responds the ALJ reasonably incorporated Mr. Davies's testimony by formulating an RFC that allows less than a full range of light work, a lift/carry/push/pull limit of 35 pounds, a sit/stand option, and limited contact with supervisors and the public. Tr. 15; Def.'s Br. 17–19, ECF No. 20. Not surprisingly, Mr. Davies's testimony is less specific than that of Drs. Kalidindi and Eckstein, and does not address with particularity Plaintiff's functional limitations. Thus, although the RFC is inconsistent with the specific findings of Drs. Kalidindi and Eckstein for the reasons explained above, the RFC is nonetheless generally consistent with the general impairments noted by Mr. Davies. *See* tr. 303–11. As such, the ALJ did not err.

## IV. Remand for Benefits

Because the ALJ erred in assessing plaintiff's credibility and the medical opinions of treating physician Dr. Kalidindi and examining physician Dr. Eckstein, the RFC formulation is not based on substantial evidence, and therefore requires reversal. Accordingly, the Court need not address the parties' contentions regarding further error at step five, as the hypothetical questions (and answers) are of little evidentiary value. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988).

Instead, the only remaining issue is whether to remand for further proceedings or to award benefits. 42 U.S.C. § 405(g); *Garrison*, 759 F.3d at 1019. The Ninth Circuit has articulated the credit-as-true rule as a means to determine whether to remand for immediate calculation and award of benefits. *Garrison*, 759 F.3d at 1019. The rule requires three requisites be met: first, the record has been fully developed and further proceedings would not serve any

useful purpose; second, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether it is Plaintiff's testimony or medical opinion; and third, if the improperly discredited evidence were credited as true, the ALJ would be obligated to find Plaintiff disabled on remand. *Id.* (citations omitted). However, *Garrison* also held that in cases where "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled," further proceedings are appropriate. *Id.* at 1021.

Here, the record, including the medical opinion evidence submitted subsequent to the hearing, is complete. As discussed above, the ALJ erroneously discredited Plaintiff's subjective testimony regarding the nature and extent of his symptoms, and failed to provide legally sufficient bases for failing to incorporate the medical opinions of Drs. Kalidindi and Eckstein in his RFC, precluding probative findings at step five. If Drs. Kalidindi and Eckstein's conclusions were credited as true, Plaintiff would be limited to working four-hour days, and would be expected to have marked limitations in remembering and carrying out detailed instructions, performing work activities within a schedule and maintain regular attendance and punctuality, and limited ability to complete a normal workday without an unreasonable number of breaks. Tr. 38, 69, 617–18.

Either of the doctors' opined restrictions would prevent Plaintiff from performing regular full-time work under the rules. Clearly, Dr. Kalidindi's four-hour per day work restriction necessitates a finding of disabled under the Act. Further, the VE testified that for *any* of the jobs the ALJ identified, the restrictions outlined by Dr. Eckstein—generally, marked impairment in a number of subcategories impacting concentration, persistence, and pace—would be preclusive. Tr. 137–40, 617–18. Thus, crediting either of the erroneously discredited medical opinions as true renders a finding of disability.

Considering the record as a whole, and bearing in mind the insufficient rationales for according diminished weight to Plaintiff's testimony, his treating doctor, and an examining psychiatrist's findings, the Court is satisfied that Plaintiff is disabled under the Act. The Court, therefore, reverses the ALJ's decision and remands the case with instructions to award benefits to Plaintiff.

## CONCLUSION

The Commissioner erred in making an adverse credibility determination and in rejecting the testimony of Plaintiff's treating physician and an examining physician. The Commissioner's final decision is REVERSED and REMANDED for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 28th day of July 2015.


_____
**Michael J. McShane**
**United States District Judge**